153 A.2d 575 (1959)
Francis J. SLATTERY, Millard F. Hoffecker and Harry Herel, Plaintiffs,
v.
PULLMAN COMPANY (Pullman Incorporated), a corporation of the State of Illinois and Prudential Insurance Company of America, a corporation of the State of New Jersey, Defendants.
Court of Chancery of Delaware, New Castle.
June 17, 1959.
*576 James J. Walsh and Gerald Z. Berkowitz, Wilmington, for plaintiffs.
S. Samuel Arsht and Harvey S. Kronfeld (of Morris, Nichols, Arsht & Tunnell), Wilmington, for defendant, Pullman Co.
Henry R. Horsey (of Berl, Potter & Anderson), Wilmington, and Owen Rall (of Peterson, Lowry, Rall, Barber & Ross), Chicago, Ill., for defendant, Prudential Ins. Co. of America.
SEITZ, Chancellor.
Plaintiffs were employees of the defendant, the Pullman Company ("Pullman") until 1958 at which time their employment was terminated. The other defendant, the Prudential Insurance Company of America ("Prudential") has, since 1929, written certain group term insurance policies for Pullman.
Plaintiffs were covered by the policies and pursuant to their understanding with Pullman, the plaintiffs paid to Pullman certain amounts which constituted a portion of the premiums allocable to their coverage. Except for the right to convert their policies, plaintiffs' rights under the contract ceased when their employment was terminated.
By this action plaintiffs seek an accounting of all the transactions between plaintiffs and defendants with respect to the insurance coverage and an accounting of the monies received by the defendants in relation thereto. They further pray that the defendants be ordered to "reinstate or renew" the plaintiffs' certificate of insurance in accordance with the terms of the original agreement.
Preliminarily, plaintiffs allege that in 1929 they were coerced into purchasing coverage under the group policies. How that can be relevant to the issue of ascertaining plaintiffs' rights under the policies, I do not see. There is no prayer to rescind the agreement as to plaintiffs.
Plaintiffs next suggest that defendants took the portion of the premium payments paid by plaintiffs and failed to disclose to plaintiffs the manner in which their rights and obligations would be ascertained at the date of the termination of their employment. I think the short answer must be that under the pertinent master policy which is a part of the amended complaint, it is provided that the certificates issued to the employees should contain certain provisions. One of the required provisions deals explicitly with the subject matter of plaintiffs' grievance, viz., right to convert the policy. It states the terms and conditions under which an employee might convert his policy in the event of termination of employment. Thus, plaintiffs cannot ask for relief concerning matters as to which they are charged with notice.
Plaintiffs also seek an accounting of the dividends allegedly received by Pullman from Prudential under the terms of the master policy. The theory of this claim is that a portion of such dividends belongs to plaintiffs since they were earned from premium money supplied in part by plaintiffs. It is not alleged that there was any express contract between plaintiffs and Pullman with respect to the sharing of dividends. Thus, plaintiffs cannot maintain this action against Pullman under any theory of breach of an express agreement.
Plaintiffs' case against Pullman for an accounting of dividend benefits must *577 be on the theory of unjust enrichment. But in order to find an unjust enrichment there must be some legal basis of obligation on the part of Pullman. The allegations of the complaint do not show any such legal basis. Certainly the fact that the employer executed a group policy with Prudential which contained a provision that the employee should pay Pullman up to a certain amount (a portion of the premiums) does not justify the conclusion that the employer intended or should be held to have agreed to apportion any dividends with the employees. The employer in effect told the employees that they would receive certain coverage for certain payments. This case is even stronger on its facts than Pelelas v. Caterpillar Tractor, 7 Cir., 113 F.2d 629, in which a similar action against an employer was dismissed, inter alia, because there was no showing of an express or implied contract to pay plaintiff-employee any portion of the dividends.
I therefore conclude that the various theories under which the plaintiffs seek to maintain this action against Pullman are without merit and Pullman's motion to dismiss must be granted.
It is equally clear that plaintiffs cannot maintain this action against Prudential. I say this because plaintiffs' grievance against Prudential boils down to a claim that Prudential is obligated to pay to plaintiffs a portion of the dividends declared on the master policy. It is not alleged that any such contract existed between Prudential and plaintiffs. But of vital importance, the master policy executed by Prudential and Pullman explicitly provides that the dividends are to be paid to or held for the benefit of Pullman. Thus, the contract specifically deals with the problem of the handling of the dividends and there is no room to interpret the agreement as giving any rights to plaintiffs as against Prudential. It follows that Prudential's motion to dismiss should also be granted.
Present order on notice.